UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00020-RJC
(3:18-cr-00133-RJC-DCK-1)

| | |
|---|---|
| MARCUS LENARD ARMSTRONG, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.     BACKGROUND**

In June 2017, the Drug Enforcement Administration (DEA) and the United States Postal Inspector Service (USPIS) began investigating Petitioner Marcus Lenard Armstrong ("Petitioner") for trafficking an opiate analog known as U-47700. [Id. at ¶ 12]. On June 27, 2017, the DEA discovered that a package containing suspected Xanax pills was being shipped from Flushing, New York, to Charlotte, North Carolina. [Id. at ¶ 13]. The same sender was shipping packages to multiple locations through the country. [Id.]. Two days later, the parcel, which was addressed to "Tim McCoy," arrived in Charlotte. [Id. at ¶ 14]. That afternoon, Petitioner stopped a postal carrier in the area of the delivery address and asked whether the carrier had any packages for "Tim

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00020-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:18-cr-00133-RJC-DCK-1.

McCoy." [Id.]. The carrier replied that he did not, but he stated that the packages might be available for pickup at the post office. [Id.]. Petitioner stated that he would go to the post office. [Id.].

The next day, officers went to the address on the package and spoke with Tim McCoy, who stated that he had agreed to accept packages for Petitioner. [Doc. 1 at 3]. McCoy gave consent to open the package. [Id.]. Officers found two aluminum Ziploc bags containing a white powdery substance inside the package. [Id.]. The substance was taken to a police lab for testing. [Id.]. Later that afternoon, Petitioner again approached the postal carrier, identified himself as Tim McCoy, and asked if the carrier had any packages for delivery. [CR Doc. 28 at ¶ 16]. The carrier stated that he did not have any packages for McCoy, but that a package may be available at the post office. [Id.]. Petitioner gave the carrier his phone number and asked the carrier to contact him if the carrier located the package. [Id.]. Petitioner then contacted the post office, advising that he was going to pick up the package. [Id.]. Postal employees notified law enforcement, who proceeded to the post office. [Id.].

At about 2:47 p.m., Petitioner arrived at the post office and was approached by an undercover USPIS officer acting as a postal employee. [Id. at ¶ 17]. Petitioner said he was there to pick up a package. [Id.]. The employee asked for the package's shipping address or tracking number. [Id.]. Petitioner consulted his phone and identified the street to which the package was shipped but stated that the tracking number was in his car. [Id.]. Petitioner then became nervous and the employee identified himself as a federal agent. [Id.]. Petitioner pushed the officer and ran to the parking lot where a brief struggled ensued. [Id.]. The USPIS officer was injured, but officers were able to detain Petitioner. [Id.].

2

Case 3:18-cr-00133-RJC-DCK   Document 42   Filed 03/10/21   Page 2 of 16

At approximately 2:56 p.m., less than ten minutes after Petitioner had arrived at the post office, officers *Mirandized* Petitioner and interviewed him. [Id. at ¶ 18]. At first, Petitioner stated that he was picking up the package for a friend but refused to identify the friend and stated that he did not know what the package contained. [Id.]. The USPIS officer told Petitioner that the package contained an illegal narcotic and that they had questions about his involvement in the offense. [Id.]. At that point, around 3:01 p.m., Petitioner stated that he wanted a lawyer. [Id.]. He was arrested and taken to a detention center. [Id.].

Once at the detention center, Petitioner requested to speak with the USPIS officers. [Id. at ¶ 19]. Around 5:24 p.m., officers re-*Mirandized* Petitioner. Petitioner then told officers that a man named "G" had asked him to accept packages through the U.S. mail. [Id.]. Petitioner stated that he met G through a chat room in November 2016. They agreed that Petitioner would provide G with a mailing address for the packages and that G would provide Petitioner with the packages' tracking numbers. [Id. at ¶ 20]. Petitioner admitted to receiving three packages for G that had been delivered to the Atlanta, Georgia, area, and giving them to G in person or remailing them to G at another location. [Id.]. G paid Armstrong $500 per package. [Id. at ¶ 21]. Petitioner stated that he did not know what was in the packages, but he knew that "it couldn't be good." [Id.].

Petitioner stated that he had used McCoy's address to receive the package that was intercepted. Petitioner also admitted that he had approached the postal carrier and lied about his identity as McCoy. [Id. at ¶ 22]. Petitioner stated that McCoy was a family friend and not involved in the scheme. [Id.].

Officers obtained federal search warrants to search Petitioner's two cell phones. [Id. at ¶ 23]. One of the cell phones had the same number Petitioner had given to the postal carrier. [Id.]. The other phone contained phone logs discussing narcotics trafficking, increasing the potency of

3

opiates by adding Benadryl, and the "Silk Road," an online dark web market used to sell and purchase illegal drugs. [Id.].

Petitioner was charged by a criminal complaint with resisting, impeding, and interfering with a federal agent while engaged in the performance of official duties. [Case No. 3:17-mj-00239, Doc. 1: Criminal Complaint]. On July 11, 2017, the Court placed Petitioner on supervised electronic monitoring. [CR Doc. 28 at ¶ 24]. Two weeks later, he tested positive for and admitting to using marijuana. [Id. at ¶ 7]. Four months later, Petitioner cut off his location monitoring transmitter and fled. [Id. at ¶ 25]. He was eventually arrested in Atlanta, Georgia, on January 12, 2018. [Id. at ¶ 8].

Petitioner was then charged in a criminal complaint with one count of conspiracy to distribute and possession with intent to distribute a detectable amount of U-47700, a Schedule I controlled substance in violation of 21 U.S.C. § 846 (Count One), and one count of assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111 (Count Two). [CR Doc. 1 at 1: Criminal Complaint]. Later, Petitioner was charged in a Bill of Information with only the drug conspiracy offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[2] [CR Doc. 13: Bill of Information].

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Count One in exchange for other terms of the plea agreement. [See Doc. 14: Plea Agreement]. The parties agreed, pursuant to Rule 11(c)(1)(B), to jointly recommend the Court make certain findings and conclusions as to the Sentencing Guidelines (U.S.S.G.). [See id. at ¶ 8]. These included, in pertinent part, the following:

---

[2] Count Two previously charged in the Complaint was omitted from the Information. [See CR Docs. 1, 13].

b. The amount of mixture and substance containing a detectable amount of 3,4-Dichloro-N-[2-(dimethylamine) cyclohexyl]-N-methylbenzamide ("U-47700"), a Schedule I controlled substance, that was known to or reasonably foreseeable by the defendant (including relevant conduct) was approximately one thousand three, point three eight (1,003.38) grams of U-47700.

b1. The parties agree to recommend, but not bind the District Court, that for United States Sentencing Guideline (U.S.S.G.) purposes, under U.S.S.G. §2D1.1, 1 gram of Morphine = 500 grams of Marijuana.
Subsequently, 1,003.38 grams of U-47700 = 501,690 grams of Marijuana.
The parties further agree this comparison is based on effects of the U-47700 drug, and not on chemical structure.

c. The United States and Defendant agree that the U.S.S.G. §3C1.2 enhancement is applicable herein….

[Id.].

Petitioner stipulated that there was a factual basis for his guilty plea, that he had read it and understood it, and that the factual basis could be used by the Court and the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a). [Id. at ¶ 15]. Petitioner also agreed not to object to any provisions therein. [See CR Doc. 15: Factual Basis]. Petitioner waived his rights to contest his conviction and/or sentence through appeal or post-conviction action, including pursuant 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶19-20].

Petitioner pleaded guilty in accordance with the plea agreement. At the plea and Rule 11 hearing, Petitioner testified that he understood that he was under oath and required to give truthful answers to the questions asked by the Court. [CR Doc. 21 at ¶ 1: Acceptance and Entry of Guilty Plea; CR Doc. 40 at 4: Plea Hearing Tr.]. The Court reviewed the Bill of Information, including the charge and its minimum and maximum penalties. Petitioner testified that he understood the

5

Case 3:18-cr-00133-RJC-DCK   Document 42   Filed 03/10/21   Page 5 of 16

charge and the penalties and that he had been over the Bill of Information and the charge with his attorney. [CR Doc. 40 at 2-6].

Petitioner further testified that he had spoken with his attorney about how the Sentencing Guidelines might apply to his case and that the District Judge would not be able to determine the applicable guidelines range until after Petitioner's Presentence Investigation Report (PSR) was prepared and Petitioner had the opportunity to comment on it. [CR Doc. 40 at 6-7; CR Doc. 21 at ¶¶ 13-14]. Petitioner acknowledged that he understood that if the sentence imposed were more severe than Petitioner expected, or the Court did not accept the Government's sentencing recommendation, Petitioner would remain bound by his plea and have no right to withdraw. [CR Doc. 40 at 7; CR Doc. 21 at ¶ 17]. Petitioner confirmed that he was, in fact, guilty of the charge to which he was pleading guilty. [CR Doc. 40 at 8; CR Doc. 21 at ¶ 24].

Counsel for the Government described the terms of the plea agreement in detail. [CR Doc. 40 at 9-12]. After the Government reviewed the terms of the plea agreement, Petitioner testified that he understood its terms and agreed to them, including his appeal and post-conviction relief waiver. [Id. at 12-13]. Petitioner also testified that he had reviewed the factual basis with his attorney and that he had read it, understood it, and agreed with it. [Id. at 13]. Petitioner specifically testified that he was "satisfied with the services of [his] lawyer in this case" and had no other comments regarding his services. [Id. at 13-14]. Petitioner's attorney then attested that he had reviewed all the terms of the plea agreement Petitioner, and that he was satisfied that Petitioner understood those terms. [Id. at 14]. Thereafter, the Court found that Petitioner's guilty plea was "knowingly and voluntarily made" and found a factual basis to support the plea. [Id.; CR Doc. 21 at p. 5]. The Magistrate Judge then accepted Petitioner's guilty plea. [Id.].

Before Petitioner's sentencing, a probation officer prepared a PSR. [CR Doc. 28: PSR]. In the PSR, the probation officer set forth the relevant conduct, as described above, in detail. [See id. at ¶¶ 11-26]. The probation officer recommended a base offense level of 26 pursuant to U.S.S.G. §2D1.1. [Id. at ¶ 31]. The probation officer noted that research regarding U-47700 "indicates that the drug exhibits pharmacological profiles similar to morphine or other mu-opioid receptor agonists (citation omitted). Therefore, U-47700 is calculated equivalent to morphine (USSG §2D1.1, comment. (n.6)). Pursuant to USSG §2D1.1, comment. (n.8(D)), one (1) gram morphine equals 500 grams of marijuana." [Id.]. And 1,003.38 grams of U-47700 equals 501,690 grams (or 501.69 kilograms) of marijuana, which yields a base offense level of 26. [Id.]. The probation officer recommended a two-level enhancement for obstruction of justice based on Petitioner's absconding from supervision and a three-level reduction for acceptance of responsibility, yielding a Total Offense Level (TOL) of 25. [Id. at ¶¶ 35, 38-40]. The probation officer computed a criminal history category of VI, which together with a TOL of 25, yielded a guidelines range of 110 to 137 months' imprisonment. [Id. at ¶¶ 40, 57, 82]. The PSR also noted that statutory maximum term of imprisonment of 20 years. [Id. at ¶ 81 (citing 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))].

The PSR noted the parties' agreement that the two-level U.S.S.G. §3C1.2 reckless endangerment during flight enhancement applied. [Id. at ¶ 83]. Under this enhancement, two levels are added to a defendant's offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. §3C1.2. The probation officer, however, asserted that two-level obstruction of justice enhancement applies instead of the two-level reckless endangerment enhancement. [Doc. 28 at ¶ 83]. The probation officer noted that, "while more than one
7

adjustment can be applied under Chapter 3, the [Petitioner's] conduct during the offense does not appear to rise to the level necessary to support multiple enhancements under this chapter." [Id.].

Petitioner's sentencing hearing was held on January 31, 2019. [CR Doc. 41: Sentencing Tr.]. At the sentencing hearing, the parties stipulated that there was a factual basis to support the guilty plea and that the Court could rely on the offense conduct set forth in the PSR to establish the factual basis. [Id. at 2]. Petitioner testified that he read and understood the PSR and that he had had enough time to go over the PSR with his attorney. [Id. at 3]. Petitioner objected to the two-level obstruction of justice enhancement, arguing that the facts did not support its application. [Id. at 3-7]. The Court then noted the parties' agreement to the reckless endangerment enhancement, but that the probation officer found that it did not apply. [Id. at 7-8]. The Government stated that "equitably one or the other should be applied." [Id. at 8]. The Court, however, stated its belief that "both could possibly apply," yielding a TOL of 27, and proceeded to convey its reasoning for that conclusion. [Id. at 9-10]. Nonetheless, the Court decided to deny Petitioner's objection to the obstruction enhancement and to not apply the reckless endangerment enhancement jointly recommended by the parties. [Id. at 10]. Furthermore, the Court noted that "if [it] had not adjusted [the offense level] under obstruction, [it] would have adjusted it under reckless endangerment," but the Court was "choosing not to adjust for both." [Id.]. The Court, therefore, determined consistent with the PSR that the guidelines sentencing range was 110 to 137 months. [Id.]. After hearing argument on the § 3553(a) sentencing factors and a statement by Petitioner, the Court sentenced Petitioner to a term of imprisonment of 120 months. [Id. at 10-19]. Judgment on Petitioner's conviction was entered on March 4, 2019. [CR Doc. 35: Judgment]. Petitioner did not directly appeal his conviction or sentence.

On January 10, 2020, Petitioner timely filed the instant motion to vacate under § 2255. [CV Doc. 1]. As grounds for his § 2255 motion, Petitioner claims his attorney provided ineffective assistance of counsel on the following grounds: (1) his attorney failed to move for the suppression of illegally seized evidence; (2) his attorney failed to advise Petitioner of an affirmative defense to the crime charged; and (3) his attorney induced Petitioner to plead guilty based on erroneous advice regarding Petitioner's sentencing exposure. [CV Doc. 1 at 4-5, 7]. Petitioner asks that his sentence be vacated and for a trial. [Id. at 12]. The Government, on this Court's Order, timely responded to Petitioner's motion to vacate and Petitioner replied. [CV Docs. 4, 7]. Several months later, Petitioner filed a motion for summary judgment. [CV Doc. 8]. The Government responded to this motion and Petitioner replied. [CV Docs. 9, 10].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See

9

Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

### A. Suppression of Evidence and Affirmative Defense

Here, Petitioner claims that counsel should have moved to suppress all evidence obtained from the allegedly unlawful investigative detention. Petitioner claims that his ambiguous conduct was insufficient to establish probable cause and that his arrest was, therefore, unlawful and all evidence, including his statements, obtained from such detention should have been suppressed. [CV Doc. 1-1 at 13-14]. Petitioner also argues that his counsel failed to investigate a viable affirmative defense of self-defense relative to the charge under 18 U.S.C. § 111. Petitioner contends that he was justified in his resistance to the officer who "misrepresented his official capacity and his mission." [Id. at 17]. Petitioner claims these circumstances "warrant[ ] dismissal of the Resisting a Federal Officer Complaint." [Id. at 14, 17].

These claims fail. Petitioner waived his claims that his attorney failed to file a motion to suppress and failed to inform him of an affirmative defense by pleading guilty. None of Petitioner's assertions establish that his attorney's alleged errors impaired his understanding of the

11

consequences of his guilty plea or the voluntariness of his decision to accept those consequences. See Hunter v. United States, No. 3:16-cv-00052, 2016 WL 2888608, at *3 (W.D.N.C. May 13, 2016). Thus, Petitioner waived these claims by pleading guilty. See Carrasco v. United States, No. 3:16-cv-298, 2016 WL 6023539, at *4 (W.D.N.C. Oct. 13, 2016) (holding that by pleading guilty petitioner had waived the right to challenge his attorney's failure to file a motion to suppress). Moreover, these claims lack merit in any event.

Petitioner was not charged with violating § 111 in the Bill of Information.[3] He was only charged with drug trafficking and only pleaded guilty to drug trafficking. Petitioner cannot show deficient performance or prejudice where he was not convicted of the § 111 charge and he does not allege or show that self-defense would be a defense to his drug trafficking charge. Furthermore, counsel's decision not to file a motion to suppress was reasonable. The facts, as outlined in the PSR accepted by Petitioner, show there was no unlawful detention, that Petitioner's statements were made after he was *Mirandized*, and that search warrants were obtained for Petitioner's cell phones. Petitioner's conduct in attempting to pick up a package that was addressed to another person and that contained Ziploc bags with a white powdery substance was sufficient to create reasonable suspicion for officers to conduct an investigative detention. See United States v. Dickey-Bey, 393 F.3d 449, 455-56 (4th Cir. 2004) (holding there was probable cause to arrest a man who picked up a package containing cocaine from a mail delivery store). Moreover, Petitioner's flight and assault of a federal agent provided officers with probable cause to arrest him. Virginia v. Moore, 553 U.S. 164, 171 (2008) (holding "when an officer has probable cause to believe a person committed even a minor crime in his presence … [t]he arrest is constitutionally reasonable"). As such, counsel's performance was not deficient for not filing a motion to suppress.

---

[3] Furthermore, the Court did not apply the reckless endangerment enhancement under U.S.S.G. §3C1.2 at sentencing either.

And Petitioner cannot show that he was prejudiced by this decision. He has not shown that a motion to suppress would have been successful. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (A petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.").

The Court, therefore, will dismiss these claims. Petitioner has waived these pre-plea claims of ineffective assistance and they are also without merit.

### B. Erroneous Advice on Sentencing Exposure

On this issue, Petitioner contends that his attorney told him that if he did not plead guilty, Petitioner "would be indicted and his sentence would be based upon the chemical structure of the controlled substance making the marijuana equivalent of U-47700 Fentenyl [*sic*] Analogue and his base offense level a (34), presuming a criminal history category (4), would provide a sentencing range of 210-265 months."[4] [CV Doc. 1-1 at 18]. Petitioner states that there was "no evidence" to support his counsel's representation regarding how the base offense level could be calculated if Petitioner did not plead guilty. Namely, Petitioner argues that U-47700's chemical structure is not

---

[4] Pursuant to U.S.S.G. §2D1.1 cmt. n. 6 (2016), when determining the base offense level for a controlled substance not specifically referenced in that guideline, a court should use "the marihuana equivalency of the most closely related controlled substance referenced in this guideline." In making this determination, a court should consider the following:

(A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

(B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

13

substantially similar to Fentanyl and, therefore, Petitioner's sentence was never going to be based on the marijuana equivalent of Fentanyl. [Id. at 18-19]. Instead, Petitioner argues that his sentence was necessarily going to be based on the marijuana equivalent of morphine. Petitioner asserts that had he been accurately advised of his potential sentencing exposure, he would not have pled guilty, but would have proceeded to trial. [Id. at 20].

Here, Petitioner admitted to conspiring to possess with intent to distribute U-47700, which at the time, was a relatively new controlled substance. It was added to the controlled substance list on a temporary basis in November 2016 and permanently in April 2018. 21 C.F.R. § 1308.01 et seq.; 81 F.R. 79389 (2016); 83 F.R. 17486 (2018). As noted, under the Guidelines, the chemical structure, the effects on the nervous system, and the comparative strength of the controlled substance were all proper considerations in determining the most closely related controlled substance for determining the base offense level. "Butyryl fentanyl and U-47700 share a pharmacological profile similar to fentanyl, morphine, and other synthetic opioids. Both butyryl fentanyl and U-47700 are abused for their opioid-like effects. Evidence suggests the pattern of abuse of butyryl fentanyl and U-47700 parallels that of heroin and prescription opioid analgesics." 83 F.R. 17486-01. "Similar to morphine and fentanyl, both butyryl fentanyl and U-47700 act as µ-opioid receptor agonists. Data … demonstrates that butyryl fentanyl and U-47700 produce pharmacological effects similar to fentanyl and morphine." Food Drug Cosm. L. Rep. ¶ 40,803, 2018 WL 7571728 (Apr. 20, 2018). Given the newness of U-47700, the fact that it shares a pharmacological profile similar to fentanyl and produces pharmacological effects similar to fentanyl and morphine, Petitioner's counsel's alleged advice that fentanyl could be used as the marijuana equivalent is not outside the wide range of reasonable professional assistance. Moreover, the first case even mentioning U-47700 was not decided until July 2018, months after

14

Petitioner pleaded guilty. See United States v. Okparaeka, No. 17-cr-00225, 2018 WL 3323822 (S.D.N.Y. July 5, 2018).

Even if Petitioner could show deficient performance, he cannot show prejudice. Petitioner's claim that his attorney induced him to take the plea deal is belied by his sworn testimony at the plea hearing. Namely, Petitioner testified that no one threatened, intimated, or forced him to enter a guilty plea and that no one made any promises of leniency or a light sentence to induce him to plead guilty. [CR Doc. 40 at 13]. Petitioner cannot now contradict those sworn assertions. See Lemaster, 403 F.3d 216, 221-22. Proceeding to trial would not have been objectively reasonable in any event. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) ("The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts."). Here, there was substantial evidence against Petitioner. Furthermore, the plea agreement recommended that the amount of drugs involved in the offense was 1,003 grams of U-47700, the amount in the package at issue, rather than the total historical value of the drugs, 4,012 grams, which included the three packages Petitioner received for G in Atlanta. [See CR Doc. 28 at ¶ 26]. As such, without the plea agreement, it is more likely Petitioner would have been sentenced based on a much higher drug quantity, yielding up to a base offense level of 30.[5] See U.S.S.G. §2D1.1(a)(5). Finally, the Court sentenced Petitioner within the guidelines range to 120 months' imprisonment and then reduced his sentence to 90 month's imprisonment on the Government's motion under Rule 35(b) of the Federal Rules of Criminal Procedure. [See Docs. 34, 35, 37]. As such, Petitioner's claim

---

[5] Pursuant to U.S.S.G. § 2D1.1, comment, (n.8(D)), one gram of morphine equals 500 grams of marijuana. Therefore, 4,012 grams of U-47700 equals 2,006,000 grams or 2,006 kilograms of marijuana. A drug amount between 1,000 kilograms but less than 3,000 kilograms of marijuana yields a base offense level of 30. The guidelines range for a TOL of 30 and a criminal history category of VI would have been 168 to 210 months' imprisonment.

that he would have proceeded to trial but for counsel's purported advice regarding the marijuana equivalent under the Guidelines contradicts his testimony at the plea hearing and is not objectively reasonable. The Court, therefore, will also deny this claim of ineffective assistance of counsel.

In sum, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed. See Strickland, 466 U.S. at 687-88.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**. Signed: March 10, 2021

Robert J. Conrad, Jr.
United States District Judge